SHARON A. URIAS (SBN 180642)
sharon.urias@gmlaw.com
MADISON M. MARDER (SBN 346796)
madison.marder@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 480.306.5458
Facsimile: 480.306.5459

Attorneys for Defendants and Counterclaimants
Joseph Cohen and ICU Production, Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN M. KNAPP, an individual,<br>Plaintiff,<br>vs.<br>JOSEPH COHEN, an individual, *et al*,<br>Defendants.<br>and<br>CONEY ISLAND PICNIC, LLC, a Nevada limited liability company,<br>Nominal Defendant. | Case No. 2:26-cv-6066-SRM-MBK<br><br>**DEFENDANTS JOSEPH COHEN AND ICU PRODUCTION, INC.'S ANSWER TO SECOND AMENDED COMPLAINT AND COUNTERCLAIM** |
| ICU PRODUCTION, INC., a California corporation; and JOSEPH COHEN, an individual;<br>Counterclaimants,<br>vs.<br>JONATHAN KNAPP, an individual,<br>Counterdefendant. | |

In response to the Second Amended Complaint of plaintiff Jonathan Knapp ("Plaintiff" or "Knapp"), defendants Joseph Cohen, individually and as trustee of the Joseph & Alona Cohen Family Trust ("Cohen") and ICU Production, Inc. ("ICU") (collectively, "Defendants") hereby file their Answer and Counterclaims as follows:

**ANSWER**

1. In answer to the allegations in paragraph 1 of the SAC, Defendants lack sufficient information to form a belief regarding the truth of whether Knapp "engages in significant business in Los Angeles County, California" and on that basis deny said allegation. Defendants deny each and every remaining allegation set forth therein.

2. In answer to the allegations in paragraph 2 of the SAC, Defendants admit that Coney Island Picnic, LLC ("CIP") is a Nevada limited liability company registered to conduct business in California. Defendants deny each and every remaining allegation set forth therein.

3. In answer to the allegations in paragraph 3 of the SAC, Defendants admit that Cohen is an individual, the son of defendant Isaac Cohen ("Isaac"), that he conducts business in Los Angeles County, California and that he is a trustee of the Joseph & Alona Cohen Family Trust. Defendants deny each and every remaining allegation set forth therein.

4. In answer to the allegations in paragraph 4 of the SAC, Defendants admit that Isaac is an individual and Cohen's father. Defendants admit, upon information and belief, that Isaac is a trustee of the Isaac G. Cohen Living Trust. Defendants deny each and every remaining allegation set forth therein.

5. In answer to the allegations in paragraph 5 of the SAC, Defendants admit that ICU is a California corporation and that the Cohens are shareholders. Defendants deny each and every remaining allegation set forth therein.

6. In answer to the allegations in paragraph 6 of the SAC, Defendants respond that they do not contain factual allegations, but rather, legal conclusions, statements and

characterizations that are not capable of admission or denial. To the extent a response is required, Defendants deny each and every allegation set forth therein.

7. In answer to the allegations in paragraph 7 of the SAC, Defendants respond that they do not contain factual allegations, but rather, legal conclusions, statements and characterizations that are not capable of admission or denial. To the extent a response is required, Defendants deny each and every allegation set forth therein.

8. In answer to the allegations in paragraph 8 of the SAC, Defendants respond that they do not contain factual allegations, but rather, legal conclusions, statements and characterizations that are not capable of admission or denial. To the extent a response is required, Defendants deny each and every allegation set forth therein.

9. In answer to the allegations in paragraph 9 of the SAC, Defendants admit that jurisdiction and venue are appropriate with respect to them but affirmatively allege that Isaac is a citizen and resident of Israel without sufficient minimum contacts to satisfy personal jurisdiction over him. Defendants deny each and every remaining allegation set forth therein.

10. In answer to the allegations in paragraph 10 of the SAC, Defendants admit that ICU hired Knapp as an independent contractor and that Knapp's compensation was $4,167.00 per month plus commissions. Defendants deny each and every remaining allegation set forth therein.

11. In answer to the allegations in paragraph 11 of the SAC, Defendants lack sufficient information as to the truth of said allegation and on that basis deny each and every allegation set forth therein.

12. In answer to the allegations in paragraph 12 of the SAC, Defendants deny each and every allegation set forth therein.

13. In answer to the allegations in paragraph 13 of the SAC, Defendants deny each and every allegation set forth therein.

14. In answer to the allegations in paragraph 14 of the SAC, Defendants deny each and every allegation set forth therein.

15. In answer to the allegations in paragraph 15 of the SAC, Defendants admit that on February 11, 2021, ICU filed an application with the United States Patent & Trademark Office ("USPTO") to register CONEY ISLAND PICNIC and on May 19, 2021, ICU filed an application with the USPTO to register SIMPLER DAZE. Defendants deny each and every remaining allegation set forth therein.

16. In answer to the allegations in paragraph 16 of the SAC, Defendants admit that in April 2021, Cohen caused CIP to be formed as a Nevada limited liability company. Defendants deny each and every remaining allegation set forth therein.

17. In answer to the allegations in paragraph 17 of the SAC, Defendants respond that CIP filed the following applications in the USPTO (i) on August 20, 2021, CIP filed a 1(a) application to register a Coney Island Picnic design mark in Class 25 for which U.S. Reg. No. 6,927,907 issued; (ii) on November 8, 2021, CIP filed a 1(b) application to register CONEY in Class 25, for which U.S. Reg. No. 7,288,052 issued; (iii) on November 9, 2021, CIP filed a USPTO 1(b) application to register CONEY ISLAND PICNIC in Class 18, for which U.S. Reg. No. 7,183,962 issued; and (iv) on November 9, 2021, CIP filed a 1(b) application to register a Coney Island Picnic design mark in Class 18. Defendants deny each and every remaining allegation set forth therein.

18. In answer to the allegations in paragraph 18 of the SAC, Defendants deny each and every allegation set forth therein.

19. In answer to the allegations in paragraph 19 of the SAC, Defendants deny each and every allegation set forth therein.

20. In answer to the allegations in paragraph 20 of the SAC, Defendants deny each and every allegation set forth therein.

21. In answer to the allegations in paragraph 21 of the SAC, Defendants lack sufficient information as to the truth of said allegation and on that basis deny each and every allegation set forth therein.

22. In answer to the allegations in paragraph 22 of the SAC, Defendants deny each and every allegation set forth therein.

23. In answer to the allegations in paragraph 23 of the SAC, Defendants deny each and every allegation set forth therein.

24. In answer to the allegations in paragraph 24 of the SAC, Defendants deny each and every allegation set forth therein.

25. In answer to the allegations in paragraph 25 of the SAC, Defendants deny each and every allegation set forth therein.

26. In answer to the allegations in paragraph 26 of the SAC, Defendants admit that the members of CIP entered into an Operating Agreement effective June 1, 2021 ("CIP Operating Agreement") and refer to the CIP Operating Agreement for a complete and accurate reading of its contents. Defendants deny each and every remaining allegation set forth therein.

27. In answer to the allegations in paragraph 27 of the SAC, Defendants admit that on February 23, 2022, ICU assigned CONEY ISLAND PICNIC, U.S. Reg. No. 6,648,456 to CIP and on October 14, 2024, ICU assigned SIMPLER DAZE, U.S. Reg. No. 7,482,605 to CIP. Defendants further admit that ICU did not pay, nor was it required to pay, any royalties to CIP. Defendants deny each and every remaining allegation set forth therein.

28. In answer to the allegations in paragraph 28 of the SAC, lack sufficient information as to the truth of said allegation and on that basis deny each and every allegation set forth therein. Defendants affirmatively allege that these allegations are included by Plaintiff for the sole purpose of harassing, embarrassing and harming Defendants.

29. In answer to the allegations in paragraph 29 of the SAC, Defendants deny each and every allegation set forth therein. Defendants affirmatively allege that these allegations are included by Plaintiff for the sole purpose of harassing, embarrassing and harming Defendants.

30. In answer to the allegations in paragraph 30 of the SAC, Defendants deny each and every allegation set forth therein.

31. In answer to the allegations in paragraph 31 of the SAC, Defendants deny each and every allegation set forth therein.

32. In answer to the allegations in paragraph 32 of the SAC, Defendants admit the allegations set forth therein.

**FIRST CAUSE OF ACTION**

**(For Breach of Fiduciary Duty against Joseph and Isaac – Direct Action)**

33. In answer to the allegations in paragraph 33 of the SAC, Defendants repeat and reallege each of the preceding paragraphs as though fully set forth herein.

34. In answer to the allegations in paragraph 34 of the SAC, Defendants deny each and every allegation set forth therein.

35. In answer to the allegations in paragraph 35 of the SAC, Defendants deny each and every allegation set forth therein.

36. In answer to the allegations in paragraph 36 of the SAC, Defendants deny each and every allegation set forth therein.

37. In answer to the allegations in paragraph 37 of the SAC, Defendants deny each and every allegation set forth therein.

**SECOND CAUSE OF ACTION**

**(For Breach of Fiduciary Duty against Joseph – Derivative Action)**

38. In answer to the allegations in paragraph 38 of the SAC, Defendants repeat and reallege each of the preceding paragraphs as though fully set forth herein.

39. In answer to the allegations in paragraph 39 of the SAC, Defendants deny each and every allegation set forth therein.

40. In answer to the allegations in paragraph 40 of the SAC, Defendants deny each and every allegation set forth therein.

41. In answer to the allegations in paragraph 41 of the SAC, Defendants deny each and every allegation set forth therein.

42. In answer to the allegations in paragraph 42 of the SAC, Defendants deny each and every allegation set forth therein.

43. In answer to the allegations in paragraph 43 of the SAC, Defendants deny each and every allegation set forth therein.

**THIRD CAUSE OF ACTION**

**(For Aiding and Abetting Breach of Fiduciary Duty against Isaac– Derivative Action)**

44. In answer to the allegations in paragraph 44 of the SAC, Defendants repeat and reallege each of the preceding paragraphs as though fully set forth herein.

45. In answer to the allegations in paragraph 45 of the SAC, Defendants deny each and every allegation set forth therein.

46. In answer to the allegations in paragraph 46 of the SAC, Defendants deny each and every allegation set forth therein.

47. In answer to the allegations in paragraph 47 of the SAC, Defendants deny each and every allegation set forth therein.

48. In answer to the allegations in paragraph 48 of the SAC, Defendants deny each and every allegation set forth therein.

**FOURTH CAUSE OF ACTION**

**(For Federal Trademark Infringement against ICU – Derivative Action)**

49. In answer to the allegations in paragraph 49 of the SAC, Defendants repeat and reallege each of the preceding paragraphs as though fully set forth herein.

50. In answer to the allegations in paragraph 50 of the SAC, Defendants deny each and every allegation set forth therein.

51. In answer to the allegations in paragraph 51 of the SAC, Defendants deny each and every allegation set forth therein.

52. In answer to the allegations in paragraph 52 of the SAC, Defendants deny each and every allegation set forth therein.

53. In answer to the allegations in paragraph 53 of the SAC, Defendants deny each and every allegation set forth therein.

54. In answer to the allegations in paragraph 54 of the SAC, Defendants deny each and every allegation set forth therein.

**FIFTH CAUSE OF ACTION**

**(For Intentional Misrepresentation against Joseph and Isaac – Direct Action)**

55. In answer to the allegations in paragraph 55 of the SAC, Defendants repeat and reallege each of the preceding paragraphs as though fully set forth herein.

56. In answer to the allegations in paragraph 56 of the SAC, Defendants deny each and every allegation set forth therein.

57. In answer to the allegations in paragraph 57 of the SAC, Defendants deny each and every allegation set forth therein.

58. In answer to the allegations in paragraph 58 of the SAC, Defendants deny each and every allegation set forth therein.

59. In answer to the allegations in paragraph 59 of the SAC, Defendants deny each and every allegation set forth therein.

60. In answer to the allegations in paragraph 60 of the SAC, Defendants deny each and every allegation set forth therein.

61. In answer to the allegations in paragraph 61 of the SAC, Defendants deny each and every allegation set forth therein.

62. In answer to the allegations in paragraph 62 of the SAC, Defendants deny each and every allegation set forth therein.

**SIXTH CAUSE OF ACTION**

**(For Intentional Misrepresentation against Joseph and Isaac – Direct Action)**

63. In answer to the allegations in paragraph 63 of the SAC, Defendants repeat and reallege each of the preceding paragraphs as though fully set forth herein.

64. In answer to the allegations in paragraph 64 of the SAC, Defendants deny each and every allegation set forth therein.

65. In answer to the allegations in paragraph 65 of the SAC, Defendants deny each and every allegation set forth therein.

66. In answer to the allegations in paragraph 66 of the SAC, Defendants deny each and every allegation set forth therein.

67. In answer to the allegations in paragraph 67 of the SAC, Defendants deny each and every allegation set forth therein.

68. In answer to the allegations in paragraph 68 of the SAC, Defendants deny each and every allegation set forth therein.

69. In answer to the allegations in paragraph 69 of the SAC, Defendants deny each and every allegation set forth therein.

70. In answer to the allegations in paragraph 70 of the SAC, Defendants deny each and every allegation set forth therein.

**PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to any monetary, injunctive or other relief requested by him in his Prayer for Relief, including subparts.

**AFFIRMATIVE DEFENSES**

Without admitting the truth of any allegation set forth in the Complaint, Defendants assert the following affirmative defenses to the Complaint and the claims purportedly stated therein:

1. **Statute of Limitations**: Plaintiff's claims are barred by the applicable statute of limitations, including but not limited to Cal. Civ. Proc. Code §§ 338 & 343 and Nev. Rev. Stat. § 11.190.

2. **Failure to State a Claim for Relief**: Plaintiff has failed to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

3. **Economic Loss Doctrine:** Plaintiff's tort claims are barred by the economic loss doctrine.

4. **Estoppel**: Plaintiff is estopped, in whole or in part, from asserting the claims alleged in the SAC by virtue of his own acts and/or omissions.

5. **Unclean Hands**: Plaintiff's claims are barred, in whole or in part, by virtue of his own inequitable conduct, which constitutes unclean hands.

6. **Laches**: The claims are barred by the equitable doctrine of laches. Plaintiff inexcusably delayed in instituting his claims against Defendants, which resulted in undue prejudice to Defendants.

7. **Demand Futility**: The derivative claims are barred because Plaintiff cannot establish that the managers or members with authority to bring this action have refused to do so, or that an effort to cause those managers or members to bring the action is not likely to succeed. Nev. Rev. Stat. § 86.483.

8. **Failure to Properly Plead Derivative Claims**: The derivative claims are barred because the SAC fails to comply with the prerequisites and the pleading requirements of Fed. R. Civ. P. 23.1.

9. **Release**: Plaintiff and Defendants entered into a Settlement Agreement and General Release of Claims, effective March 4, 2024, that released all the claims asserted by Plaintiff in this action.

10. **Business Judgment Rule**: Cohen is immune from liability for the breach of fiduciary duty claims by the business judgment rule because Cohen made informed

decisions, in good faith and in the honest belief that the actions taken were in the best interests of CIP.

11. **Failure to Mitigate**: Plaintiff is barred from recovery by virtue of his failure to mitigate his alleged damages and his failure to take such actions as reasonably necessary to minimize any loss which may have been sustained.

12. **Impracticability**: Plaintiff is barred from recovery for breach of contract by the doctrine of impracticability.

13. **Frustration of Purpose**: Plaintiff is barred from recovery for breach of contract by the doctrine of frustration of purpose.

14. **Set-Off**: Any damage or loss sustained by Plaintiff was proximately caused and/or contributed to by Plaintiff's conduct, thereby precluding Plaintiff's claims entirely, reducing their recoverable damages and/or entitling Defendants to a proportional set-off.

15. **Legitimate Business Justification**: Plaintiff is not entitled to recover any damages against Defendants because Defendants' actions were justified, carried out in pursuit of their legitimate economic interests and were commercially reasonable.

16. **Unjust Enrichment**: Any recovery of damages or other relief as alleged by Plaintiff would constitute an unjust enrichment of Plaintiff and is therefore barred.

17. **Acts of Third Parties**: The damages sustained by Plaintiff, if any, were proximately caused, in whole or in part, by the negligent conduct, intentional conduct and/or intervening conduct of persons or entities other than Defendants, for which Defendants are not liable or responsible.

18. **Acquiescence**: Plaintiff's claims are barred, in whole or in part, by the doctrine of acquiescence because CIP actively represented that it would not assert a claim and engaged in affirmative acts that conveyed implied consent to ICU's use of the claimed mark(s), the delay between the active representation and assertion of the

trademark infringement claim was inexcusable and the delay caused undue prejudice to Defendants.

19. **No Priority of Use**: Plaintiff's claims for trademark infringement are barred because ICU has priority of use with respect to the claimed mark(s).

20. **Waiver**: Plaintiff's claims are barred by the equitable doctrine of waiver because Plaintiff intentionally relinquished his rights, if any, by failing to object to ICU's use the mark(s) and Plaintiff's release of claims, as set forth above.

21. **Implied License**: ICU had an implied license granted by CIP to use the claimed mark(s) owned by CIP.

22. **Additional Affirmative Defenses/Reservation**: Defendants allege that they cannot fully anticipate all affirmative defenses that may be applicable to this action. Accordingly, the right to assert additional affirmative defenses, if and to the extent that such affirmative defenses are applicable, is hereby reserved.

## COUNTERCLAIMS

Counterclaimants ICU Production, Inc. ("ICU") and Joseph Cohen ("Cohen") (collectively, "Counterclaimants") hereby allege their Counterclaims against Counterdefendant Jonathan Knapp ("Knapp" or "Counterdefendant") as follows:

## NATURE OF THE CASE

1. This case arises out of Knapp's unfounded insistence that a start-up apparel brand called "Coney Island Picnic" should have been a massively successful business venture generating millions of dollars within a couple of years after it was created and fully funded by ICU.

2. Knapp, who never invested a single penny into Coney Island Picnic, LLC ("CIP"), ignores the plain language of the Operating Agreement, which is governed by Nevada law, insisting that Cohen must have done something wrong because CIP was not profitable.

3. Knapp filed this lawsuit out of petty grievances, despite the fact that he entered into a settlement agreement containing a general release of all claims.

**PARTIES, JURISDICTION AND VENUE**

4. ICU is a corporation organized and existing under the laws of the state of California, with its principal place of business in Los Angeles, California.

5. Cohen is an individual and a citizen of the state of California, residing in Los Angeles County.

6. Upon information and belief, Counterdefendant Knapp is an individual domiciled and residing in Las Vegas, Nevada.

7. The Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338, as this is a civil action arising under the Lanham Act under 15 U.S.C. § 1121. The Court has supplemental jurisdiction over all state-law claims and counterclaims pursuant to 28 U.S.C. § 1367 because such claims form part of the same case or controversy under Article III of the United States Constitution.

8. This Court has personal jurisdiction over Counterdefendant because, as alleged in Paragraph 1 of the SAC, Counterdefendant "engages in significant business in Los Angeles County, California," and Counterdefendant commenced this action in this judicial district in California.

9. Venue is proper in this district because Counterdefendant regularly conducts "significant business" in this district, he commenced this action in this judicial district, because a substantial portion of the unlawful activities alleged in these counterclaims occurred in this district, and because Counterclaimant was harmed in this district because of the unlawful conduct described in these counterclaims.

**ALLEGATIONS COMMON TO ALL COUNTERCLAIMS**

**ICU Decided to Launch the Coney Island Picnic Brand**

10. ICU is an apparel manufacturing company based in Los Angeles, California that was founded by Isaac Cohen ("Isaac") in 2007. In or about 2015, Joseph Cohen

("Cohen"), Isaac's son, began working at ICU. In approximately 2021, Isaac retired and moved to Israel, where he currently resides, at which time Cohen became ICU's President and Chief Executive Officer.

11. In addition to other business ventures, ICU manufactures private-label clothing items for retailers, who sell the apparel under their respective brands.

12. In or about January 2020, Knapp began working as an independent contractor for ICU as a project manager, working on apparel designs. Specifically, Source Showroom, Inc., an entity 100% owned by Knapp, was engaged by ICU as an independent contractor from approximately 2020 through early 2024, when Knapp was terminated, as set forth below.

13. In addition to Knapp, ICU worked with other freelance designers and consultants, including Michael Tkach ("Tkach"), who was hired to bring in retailers for private-label orders through his extensive industry contacts, including Urban Outfitters. Tkach suggested to Cohen that ICU create a brand, which would be a better presentation to the retailers.

14. Cohen gave Tkach and Knapp the go-ahead to develop a new brand, "Coney Island Picnic," which ICU would produce, market and sell to retail customers, with Tkach and Knapp to be paid commissions as part of their regular compensation.

15. ICU paid for all costs associated with the development and manufacture of Coney Island Picnic-branded apparel, including, without limitation, design, fabric and other materials, labor, packaging, shipping, duties and distribution.

16. To incentivize Tkach and Knapp to develop the "Coney Island Picnic" brand, Cohen agreed that each would have a 10% ownership interest in it, and he decided to create a separate limited liability company to own the trademark registrations, once they were filed with the United States Patent & Trademark Office ("USPTO").

17. Knapp was excited to get started on the new venture as soon as possible, and he wanted ICU to file a CONEY ISLAND PICNIC trademark application right

away, even though the mark had not yet been used in commerce. Cohen agreed that ICU would transfer the mark to the new entity once it was in use and registered, and, as set forth below, that is exactly what ICU did.

18. The parties decided to incorporate the new entity, Coney Island Picnic, LLC ("CIP"), in Nevada, and the company was incorporated on April 23, 2021.

19. The parties entered into an Operating Agreement, effective June 1, 2021, a true and correct copy of which is attached hereto as Exhibit A.

20. The CIP membership interests were allocated as follows: Isaac G. Living Trust had 40%, the Joseph & Alona Cohen Family Trust had 40%, and Knapp had 20%. Knapp's 20% interest subsumed the 10% initially designated for Tkach; however, in approximately June 2021, Tkach no longer worked at ICU.

21. The Operating Agreement provides that CIP is governed by Nevada law. (Ex. A, ¶ 10.06.)

22. The Operating Agreement provides that CIP's management rested exclusively with the company's manager(s), and that, as of the effective date, the manager was Cohen. (*Id.*, ¶ 4.01(a).) At all times relevant hereto, Cohen was and is CIP's sole manager.

23. The Operating Agreement also provides that the manager is not required to manage CIP as his/her sole and exclusive endeavor, and the other members expressly acknowledge that the manager has other business interests. (*Id.*, ¶ 4.04.) The Operating Agreement does not create or impose a fiduciary duty on the manager or any of the members.

24. ICU continued to develop, manufacture and sell Coney Island Picnic-branded apparel from March 2021 through approximately May 2024, as discussed below.

25. After Tkach left ICU, in or about June 2021, ICU hired Ryan Wood ("Wood") to replace him, and Wood introduced Cohen to Adair Findley ("Findley"),

who ICU hired in approximately January 2022 to work on the Coney Island Picnic brand. Wood and Findley worked for ICU until August 2023.

26. Cohen agreed, as part of Wood and Findley's compensation, to give each equity in CIP, and the CIP members agreed that Wood would receive 5% and Findley would receive 1% of CIP membership interests.

27. The current CIP membership interests are allocated as follows: Isaac G. Cohen Living Trust has 37.6%, the Joseph & Alona Cohen Family Trust has 37.6%, Knapp has 18.8%, Wood has 5%, and Findley has 1%.

**The Coney Island Picnic Trademarks**

28. CIP currently owns seven trademarks registered with the USPTO, including all of the marks identified in Paragraphs 29-35 (the "Coney Island Marks").

29. On February 11, 2021, ICU filed a 1(b) intent-to-use application with the USPTO to register CONEY ISLAND PICNIC in Class 25 (apparel). ICU subsequently filed a Statement of Use based on its first use in commerce of March 31, 2021. After the registration issued on February 15, 2022, U.S. Reg. No. 6,648,456, ICU assigned all rights in the mark to CIP. Accordingly, ICU owned the CONEY ISLAND PICNIC mark from at least as early as March 31, 2021, through February 15, 2022.

30. On May 19, 2021, ICU filed a 1(b) intent-to-use application with the USPTO to register SIMPLER DAZE in Class 25 (apparel). ICU subsequently filed a Statement of Use based on its first use in commerce of May 20, 2021. The registration was not issued by the USPTO until August 20, 2024, U.S. Reg. No. 7,482,605. On October 14, 2024, ICU assigned all rights in the mark to CIP. Accordingly, ICU owned the SIMPLER DAZE mark from at least as early as May 20, 2021 through October 14, 2024.

31. On August 20, 2021, CIP filed an application with the USPTO to register the design mark in Class 25 (apparel), alleging a first use in commerce date

of February 3, 2021. On December 20, 2022, U.S. Reg. No. 6,927,907 was issued to CIP.

32. On October 15, 2021, CIP filed a 1(b) intent-to-use application with the USPTO to register CIP in Class 25 (apparel). CIP subsequently filed a Statement of Use identifying a first use date in commerce of February 2022. On January 23, 2024, U.S. Reg. No. 7,288,003 was issued to CIP.

33. On November 8, 2021, CIP filed a 1(b) intent-to-use application with the USPTO to register CONEY in Class 25 (apparel). CIP subsequently filed a Statement of Use identifying a first use date in commerce of February 2022. On January 23, 2024, U.S. Reg. No. 7,288,052 was issued to CIP.

34. On November 9, 2021, CIP filed a 1(b) intent-to-use application with the USPTO to register CONEY ISLAND PICNIC in Class 18 (tote bags). CIP subsequently filed a Statement of Use identifying its first use in commerce as November 10, 2021. On October 3, 2023, U.S. Reg. Nos. 7,183,962 issued.

35. On November 9, 2021, CIP filed a 1(b) intent-to-use application with the USPTO to register the design mark in Class 18 (tote bags). CIP subsequently filed a Statement of Use identifying its first use in commerce as November 10, 2021. On October 3, 2023, U.S. Reg. No. 7,183,963 issued.

36. Pursuant to the Operating Agreement, as CIP's manager, Cohen had the exclusive right and authority to manage and control CIP's "business and affairs." (Ex. A, ¶ 4.01). Therefore, Cohen had the right to grant, and in fact did grant, consent to ICU to sell, offer to sell and/or distribute goods bearing the Coney Island Marks.

**ICU Scales Back CIP Operations and Terminates Knapp**

37. From 2021 through approximately May 2024, ICU poured hundreds of thousands of dollars into developing, designing, manufacturing and marketing Coney Island Picnic apparel; however, the brand was unsuccessful, and ICU no longer wanted

to fund the business venture.

38. In 2023, due to the brand's continued unprofitability, ICU had to terminate various employees who worked on Coney Island Picnic apparel, including Wood and Findley, as set forth above.

39. In addition, in late 2023, ICU decided to terminate its relationship with Knapp because the Coney Island Picnic brand was losing money, and Knapp was in charge of sales, which were insufficient.

40. Knapp was extremely unhappy with his termination and threatened to sue ICU. The parties resolved the dispute, entering into a Settlement Agreement and General Release of Claims (the “Agreement” or “Settlement Agreement”), effective March 4, 2024, which released all claims against, *inter alia*, Cohen, Isaac, ICU and CIP in exchange for consideration to Knapp, a true and correct copy of which is attached hereto as Exhibit B.

41. On or about July 2024, ICU transferred all Coney Island Picnic brand operations to CIP so that it could operate as a stand-alone entity. As it turned out, CIP did not generate sufficient revenue to sustain business operations, and ICU had to lend substantial sums to CIP, in amounts exceeding $700,000.00.

42. To date, ICU has not sought to recover the amounts it loaned to CIP, even though it has the right to do so under a promissory note between ICU and CIP.

43. Despite Knapp’s insistence to the contrary, CIP continues to suffer losses and does not generate any profits.

**Despite the General Release of Claims, Knapp Filed This Baseless Lawsuit**

44. In approximately April or May 2025, Knapp demanded that CIP provide accounting records, which CIP provided. Then, in July 2025, Knapp’s counsel sent a letter again making an “audit request,” even though such a request is not authorized under the applicable Nevada statutes, and threatening to sue Cohen, Isaac and ICU,

among others, claiming that CIP was entitled to royalties under a trademark license agreement.

45. Although CIP informed Knapp that it intended to comply with Nevada law and produce all required documents within the ten-business-day timeframe provided by Nev. Rev. Stat. §86.241, Knapp filed this lawsuit in Los Angeles County Superior Court less than one week later.

46. In the original Complaint, Knapp asserted eleven causes of action, advancing a very different theory of this case than that alleged in the currently operative SAC. In that Complaint, and in the subsequently filed First Amended Complaint, Knapp asserted that ICU and CIP entered into a trademark license agreement that required ICU to pay royalties to CIP, and he alleged conversion of various Coney Island Picnic trademarks. Knapp apparently abandoned that theory and now asserts, among other new hypotheses, trademark infringement and breach of fiduciary duty with respect to a "joint venture" among Knapp, Tkach, Cohen and Isaac, raised for the first time ten months after first filing this action.

**FIRST CLAIM FOR RELIEF**

**(Declaratory Judgment of No Violation of the Lanham Act)**

**(By ICU)**

47. Counterclaimants repeat and reallege each and every allegation contained in the above paragraphs of this Counterclaim as though fully set forth herein.

48. A dispute and actual controversy has arisen between ICU and Knapp as to the respective rights of the parties regarding ICU's use of the Coney Island Marks.

49. In particular, Knapp, on behalf of CIP derivatively, contends that ICU engaged in trademark infringement by manufacturing, marketing and selling apparel bearing the Coney Island Marks during the period of August 2021 through July 2024.

50. ICU denies these contentions and seeks a judicial determination that (i) there is no trademark infringement under 15 U.S.C. § 1114 because at all relevant times,

CIP, the registrant, consented to ICU's use of the Coney Island Marks (*see* 15 U.S.C. § 1114(1)(a)); or, alternatively, (ii) at all relevant times, CIP granted ICU an implied royalty-free license to use the Coney Island Marks.

51. Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, ICU seeks an Order from this Court declaring that: (i) there is no trademark infringement under 15 U.S.C. § 1114 because at all relevant times, CIP, the registrant, consented to ICU's use of the Coney Island Marks; or, alternatively, (ii) at all relevant times, CIP granted ICU an implied royalty-free license to use the Coney Island Marks, and (iii) therefore, ICU cannot be liable to Knapp for any claims arising under the Lanham Act, including but not limited to, 15 U.S.C. §§ 1114, 1117, 1125 and the remedies provided thereunder.

52. A judicial determination is necessary and appropriate at this time and under the circumstances so that the parties may ascertain their rights and duties.

53. ICU further requests an award of its reasonable attorneys' fees and costs pursuant to the "exceptional case" standard of 15 U.S.C. § 1117(a).

**SECOND CLAIM FOR RELIEF**

**(Declaratory Judgment re Release of Claims)**

**(By ICU and Cohen)**

54. Counterclaimants repeat and reallege each and every allegation contained in the above paragraphs of this Counterclaim as though fully set forth herein.

55. A dispute and actual controversy has arisen between Counterclaimants and Knapp as to the respective rights and obligations of the parties under the Settlement Agreement (Exhibit B).

56. Knapp contends that the general Release of Claims contained in the Settlement Agreement does not bar the claims alleged in the SAC. Counterclaimants dispute that contention and seek to enforce the Settlement Agreement, including the general Release of Claims contained therein.

57. Counterclaimants seek a judicial determination that (i) the Settlement Agreement precludes Knapp from filing and maintaining all the claims alleged in the SAC; (ii) Knapp breached the Settlement Agreement by filing this action, and by filing the original Complaint, First Amended Complaint and the SAC; and (iii) Counterclaimants are entitled to recover their reasonable attorneys' fees and costs under Paragraph 7.13 of the Settlement Agreement.

58. Accordingly, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, Counterclaimants seek an Order from this Court declaring that: (i) the Settlement Agreement precludes Knapp from filing and maintaining all the claims alleged in the SAC; (ii) Knapp breached the Settlement Agreement by filing this action, and by filing the original Complaint, First Amended Complaint and the SAC; and (iii) Counterclaimants are entitled to recover their reasonable attorneys' fees and costs under Paragraph 7.13 of the Settlement Agreement.

59. A judicial determination is necessary and appropriate at this time and under the circumstances so that the parties may ascertain their rights and duties.

**THIRD CLAIM FOR RELIEF**

**(Breach of Settlement Agreement)**

**(By Cohen)**

60. Counterclaimants repeat and reallege each and every allegation contained in the above paragraphs of this Counterclaim as though fully set forth herein.

61. The Settlement Agreement (Exhibit B) constitutes a binding agreement under which Knapp released all claims against ICU, Cohen, and Isaac, among others, for all acts, omissions, or events occurring on or before March 4, 2024, the date of the agreement.

62. Knapp materially breached the Settlement Agreement by filing the following claims in this action: (i) the first cause of action for "Breach of Fiduciary Duty against Joseph and Isaac – Direct Action;" (ii) the fifth cause of action for "Intentional

Misrepresentation against Joseph and Isaac – Direct Action;" and (iii) the sixth cause of action for "Intentional Misrepresentation against Joseph and Isaac – Direct Action."

63. In accordance with the Settlement Agreement, Counterclaimants have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Agreement except for those conditions, covenants, and promises that have been excused by Knapp's breach.

64. Cohen has been damaged on account of Knapp's failure to abide by the terms of the Settlement Agreement and the filing of this lawsuit.

65. Because of the foregoing breach of contract, and as a direct and proximate result thereof, Cohen has suffered damages in an amount to be proven at trial. Additionally, Cohen is entitled to recovery of his reasonable attorneys' fees and costs incurred in this action, as expressly provided in the Settlement Agreement.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaimants pray for judgment as follows:

A. For judgment in their favor on each and every claim for relief set forth in the SAC;

B. For judgment in their favor on each and every claim for relief set forth in the Counterclaim;

C. For damages awarded to Cohen in connection with his breach of contract claim in an amount to be proven at trial;

D. For an Order declaring:

   a. There is no trademark infringement under 15 U.S.C. § 1114 because at all relevant times, CIP, the registrant, consented to ICU's use of the Coney Island Marks; or, alternatively,

   b. At all relevant times, CIP granted ICU an implied royalty-free license to use the Coney Island Marks, and

c. ICU cannot be liable to Knapp for any claims arising under the Lanham Act, including but not limited to, 15 U.S.C. §§ 1114, 1117, 1125 and the remedies provided thereunder.

E. For an Order declaring:

a. The Settlement Agreement precludes Knapp from filing and maintaining all the claims alleged in the SAC;

b. Knapp breached the Settlement Agreement by filing this action, and by filing the original Complaint, First Amended Complaint and the SAC; and

c. Counterclaimants are entitled to recover their reasonable attorneys' fees and costs under Paragraph 7.13 of the Settlement Agreement.

F. For attorneys' fees under the Settlement Agreement and 15 U.S.C. § 1117(a);

G. For costs of this suit under the Settlement Agreement and applicable law; and

H. For such other relief as the Court deems just and proper.

DATED: June 18, 2026

**GREENSPOON MARDER LLP**

*/s/ Sharon A. Urias*

Sharon A. Urias
Madison M. Marder
*Attorneys for Defendants*
*Joseph Cohen and ICU Production, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record for this matter.

Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

*/s/ Marlee Grayson*