# EXHIBIT B

# SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS ("Agreement") is made and entered into as of the 4th day of March 2024, by and between JON KNAPP and his business enterprise, Source Showroom, Inc., a California corporation (collectively "KNAPP"), on one part and ICU PRODUCTION, INC., a California corporation for itself and for the benefit of each Releasee (as defined below) named below (collectively, "ICU") on the other part (sometimes ICU and KNAPP are collectively referred to as "the Parties"), with reference to the following facts:

A. KNAPP and ICU were engaged in an independent contractor business relationship until January 5, 2024 ("the Business Relationship"). KNAPP was never an employee of ICU or the Releasees.

B. KNAPP alleges he is due and owed certain sums arising from the Business Relationship, including future commissions and earnings.

C. The Parties have, in the interest of resolving the dispute, without appeal or challenge, agreed to settle this matter. ICU enters into this Agreement without acknowledging any wrongful conduct or liability on its part, and in fact, do deny the same.

NOW, THEREFORE, on the basis of the foregoing facts and in consideration of the mutual covenants and agreements of the Parties hereinafter set forth, the Parties hereby covenant and agree as follows:

## 1. AGREEMENT OF SETTLEMENT

1.1 Subject to the terms and conditions set forth herein, for the valuable consideration specified herein, the Parties hereto hereby covenant and agree to, and shall, compromise and settle all of their respective rights, claims, obligations and liabilities *inter se*, including without limitation, all of their respective rights, claims, obligations and liabilities with respect to the facts described above.

1.2 ICU will pay to KNAPP (through his business enterprise) the total sum of Forty-Eight Thousand Seven Hundred Dollars and Zero Cents ($48,700.00) ("Settlement Sum"), payable as follows:

(a) Within twenty-four (24) hours of execution of this Agreement, ICU shall pay the amount of Twenty-Four Thousand Two Hundred Dollars and Zero Cents ($24,200.00) by wire transfer payable to Source Showroom, Inc. and delivered to KNAPP.

(b) On or before March 15, 2024, ICU shall pay the remaining balance of Twenty-Four Thousand Five Hundred Dollars and Zero Cents ($24,500.00) by wire transfer payable to Source Showroom, Inc. and delivered to KNAPP.

(c) The Parties agree that said payment is for full and complete settlement of KNAPP's claims for past compensation of any kind or nature and other claims, that applicable payroll withholdings will **not** be made from the Settlement Sum, and that an IRS Form 1099 will issue reflecting the sum;

(d) ICU has made no representations to KNAPP as to his tax liability. KNAPP shall defend and indemnify ICU and hold them harmless from and against any claim (including fines, penalties, attorneys' fees and costs) for any tax liability ICU might incur as a result of KNAPP' failure to pay taxes owed by him or penalties assessed against him as a result of receiving the payment set forth herein.

1.3 As further consideration for the releases set forth below, the Parties further agree to the following *post-settlement* terms and conditions. All commissions set forth below are deemed "earned and accrued" based upon "gross sales". Gross sales require completion of a purchase order, invoice, and full payment from the client/customer. KNAPP is not entitled to any commission (including a portion or pro rata share) until it accrues, which requires full payment by the client/customer ("Accrued Commissions"),

(a) Everlast Direct License Agreement – ICU, by and through Coney Island Picnic, LLC (CIP), is negotiating with AUTHENTIC LIFESTYLE PRODUCTS LLC and SAS Apparel Group to enter a direct license agreement with EVERLAST WORLD'S BOXING HEADQUARTERS CORP to license the Everlast brand. For this purpose, CIP LLC, Authentic and SAS created EL Brands. All profits generated by EL Brands or the Everlast license that are derived through this partnership will flow to its members *pro rata*. KNAPP is entitled to receive one percent (1%) of all gross sales received by CIP from the EL Brands deal, without deduction for the debts or obligations of CIP, (for example if CIP is to receive $100k income from EL Brands, KNAPP shall receive $1,000.00 in addition to his pro rata direct profit share of the EL Brands deal)

(b) CIP Earnings. For all CIP gross revenue received, KNAPP will receive two percent 2% commission until Sales for Fall/Holiday 2024 (e.g. until June 30, 2024), 1.5% of Sales through Fall/Holiday 2024 (July 1, 2024 through December 31, 2024) and 1% Sales from January 1, 2025 through December 31, 2034. For CIP related operations (Coney Island Picnic, Simpler Daze, Silent Boom Trademarks Related) that are sold and invoiced under ICU, KNAPP will receive the 1.5% commission of Sales until December 31, 2024, and 1% from January 1, 2025 through December 31, 2034.

(i) Commission will be calculated and paid quarterly. Specifically, thirty (30) days following the conclusion of a calendar quarter, a reconciliation of accounts will be made by ICU, and provided to KNAPP. Following reconciliation, commissions will be paid via wire transfer fifteen (15) days thereafter. (By way of example only, Q3 of 2024 which includes closed sales transactions between July 1 and September 30, a reconciliation report will be generated no later than October 30 and commissions will be paid by November 15).

(ii) If shipments are under ICU then ICU will pay the commissions due to KNAPP. If commissions owed are transacted under CIP, then CIP will issue the report and pay the commission due.

(c) Foreign Transactions. For any sales revenues generated by and or through Simms Sigal Linwood Inc. (Canada) and Self Service Ltd (United Kingdom), KNAPP is entitled to receive a 1% commission on gross revenues.

(d) Pending Transactions. Although not currently signed to a formal Agreement, the Parties acknowledge and agree that KNAPP is responsible for introductions on the following client accounts: Cintas, National Safety and Industrial, Vail Resorts, Thomas Stiver, Steven Morgan, Rachel Szabo, Ryan McGrath. Any sales generated by or through these accounts will generate a 3% commission of the gross revenue sale. Commissions will be paid on these accounts via wire transfer within seven (7) business days following receipt of full and final payment from the customer.

(e) Additional Potential Transactions. Although not currently signed to a formal Agreement, the Parties acknowledge and agree that KNAPP is responsible for introductions on the following client accounts: Penns Ark, Keith Orris, Ken Eaton (Wal Mart). Any sales generated by or through these accounts will generate a 2-3% commission of Sales of the gross revenue sale. Commissions will be paid on these accounts via wire transfer within seven (7) business days following receipt of full and final payment from the customer.

(f) Continued Partnership. KNAPP and ICU will continue in their partnership for both Unison, LLC and CIP. Joseph Cohen shall continue as Managing Member of both Unison and CIP. Those entities and relationships between members are covered in their respective LLC agreements.

1.4 The Parties agree that the terms of this settlement agreement among them is and will be confidential. The Parties agree that in response to any inquiry, each Party shall state only that "***the dispute has been resolved***" and decline to provide the terms of the settlement, and that the Parties will not provide a copy of the settlement, or any description of its terms, to anyone except in compliance with a court order or as required pursuant to any pending judicial proceeding to which a Party may be a party, or to accountants, attorneys, certified financial planners or other individuals or entities to whom disclosure is necessary to obtain professional tax or financial planning advice or otherwise to satisfy or assist in satisfying the performance obligations of this Agreement, including in an action to enforce this Agreement. Any such individual or entity to whom such a disclosure is made must be advised that the information is confidential and cannot be disclosed to any other individual or entity.

1.5 The Parties shall not (and shall not permit any of their respective agents to), directly or indirectly, disparage, denigrate or make any inaccurate, untruthful or incorrect statement about (whether verbally, in writing, electronically, through social media, or through any other means of communication) the other party or any of their respective officers, directors, shareholders, managers, members, partners, employees, agents or business affiliates. For purposes of this paragraph, a disparaging statement includes, without limitation, any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character or product quality of the person or entity to whom the communication relates.

1.6 The Parties shall release each other as set forth below.

**2. RELEASE OF CLAIMS**

2.1 Except for the right to enforce this Agreement, KNAPP for himself, as well as for his agents, servants, employees, dependents, heirs, executors, administrators, assigns, and successors, past and present, and each of them, does hereby irrevocably and forever release and discharge, waive, relinquish, quitclaim, settle, and forgive all rights, interests, claims, demands, causes of action, or choses in action of whatever kind or nature, whether absolute, contingent, known, unknown, suspected or otherwise, and whether now existing or arising in the future, which he may now or hereafter have against ICU, or any affiliated or related business entities (including, but not limited to Coney Island Picnic, LLC, Asiana USA and Joseph Cohen, individually), and their respective officers, directors, shareholders, members, managers, employees, agents, servants, representatives, attorneys, insurers, owners, heirs, assigns, and successors, past and present, directly or indirectly arising out of or otherwise relating to the facts, set forth above or as otherwise set forth in the Complaint, and any other acts, omissions or events occurring on or before the date of this Agreement.

Further, without limiting the general scope of this Release, KNAPP acknowledges that it is his intention to release ICU, as well as their affiliated and related business entities, predecessors-in-interest, successors-in-interest, officers, directors, shareholders, members, managers, employees, agents, servants, representatives, attorneys, insurers, owners, assigns, and successors, past and present, directly or indirectly arising out of or otherwise relating to his claims, and to waive any and all claims against them, including, but not limited to, potential claims that KNAPP may now have or that may hereafter accrue for: reinstatement and/or re-employment with ICU, or any affiliated or related business entities; wrongful termination of the contract; breach of any claimed business and/or employment contracts with ICU, including, but not limited to, breach of the implied covenant of good faith and fair dealing and any and all other express and implied provisions of such contract; for any and all violations of: the Civil Rights Act of 1964; the Equal Pay Act; the Employee Retirement Income and Security Act (ERISA); the Fair Labor Standards Act; the Immigration Reform and Control Act of 1986; the Americans With Disabilities Act of 1990; the Age Discrimination in Employment Act (ADEA); the Genetic Information Non-Discrimination Act of 2008

(GINA); all other federal civil rights laws; the Colorado Wage Act; Colorado Whistleblower, Anti-Retaliation, Non-Interference, and Notice Giving Rules; the Colorado Anti-Discrimination Act (CADA); the Lawful Off-Duty Activities Statute (LODA), the Personnel Files Employee Inspection Right Statute, the Colorado Labor Peace Act, the Colorado Labor Relations Act, the Colorado Equal Pay Act, the Colorado Overtime and Minimum Pay Standards Order, the Colorado Healthy Families and Workplaces Act; and any and all other provisions of the statutory and common law of the State of Colorado, all other states in the United States of America, the United States of America, and all other countries of the world, that in any manner whatsoever apply to, affected or regulated the employment of KNAPP by ICU or the ending of that employment.

2.2 This general release and waiver of claims excludes, and the Employee does not waive, release, or discharge: (i) any right to file an administrative charge or complaint with, or testify, assist, or participate in an investigation, hearing, or proceeding conducted by, the Equal Employment Opportunity Commission (EEOC), Colorado and or California Civil Rights Division, or other similar federal or state administrative agencies, although the Employee waives any right to monetary relief related to any filed charge or administrative complaint; and (ii) claims that cannot be waived by law, such as claims for unemployment benefit rights and workers' compensation and rights under the National Labor Relations Act (NLRA); and (iii) any rights to vested benefits, such as pension or retirement benefits, the rights to which are governed by the terms of the applicable plan documents and award agreements.

2.3 Except for the right to enforce this Agreement, ICU, for itself, as well as for its officers, directors, shareholders, subsidiary or related entities, employees, members, managers, agents, servants, representatives, attorneys, insurers, owners, heirs, assigns, and successors, past and present and each of them, does hereby irrevocably and forever release and discharge, waive, relinquish, quitclaim, settle, and forgive all rights, interests, claims, demands, causes of action, or choses in action of whatever kind or nature, whether absolute, contingent, known, unknown, suspected or otherwise, and whether now existing or arising in the future, which he may now or hereafter have against KNAPP, his agents, servants, employees, dependents, heirs, executors, administrators, assigns, and successors, past and present, directly or indirectly arising out of or otherwise relating to the facts, set forth above or as otherwise set forth in the Complaint, and any other acts, omissions or events occurring on or before the date of this Agreement.

**3. CERTAIN REPRESENTATIONS AND WARRANTIES**

3.1 ICU hereby makes the following representations and warranties to KNAPP, each of which is material, is being relied upon by KNAPP and is true as of the date hereof:

(a) This Agreement has been duly and validly executed and delivered by ICU, and no further action of any kind or nature will be or is necessary on the part of KNAPP or any other person whomsoever, to make this Agreement valid, binding and enforceable upon ICU in accordance with the terms hereof; and this Agreement constitutes a legal, valid and binding obligation of ICU, enforceable in accordance with the terms hereof.

3.2 KNAPP hereby makes the following representations and warranties to ICU, each of which is material and is being relied on by ICU.

(a) This Agreement has been duly and validly executed and delivered by KNAPP, and no further action of any kind or nature will be or is necessary on the part of any other person whomsoever, to make this Agreement valid, binding and enforceable upon KNAPP in accordance with the terms hereof; and this Agreement constitutes a legal, valid and binding obligation of KNAPP, enforceable in accordance with the terms hereof;

(b) KNAPP is the sole and lawful owner of all rights, title and interest in and to all claims, demands, causes of action, choses in action, rights and interests covered by the provisions of Paragraph 2 hereof, and KNAPP has not heretofore sold, assigned, transferred, hypothecated, or otherwise disposed of any

interest in any such claim, demand, cause of action, chose in action, right and/or interest.

**4. ENFORCEABILITY AND BINDING AND CONCLUSIVE EFFECT**

4.1 It is the mutual intent of all Parties hereto that this Agreement is, and shall be, final, conclusive, binding, enforceable and non-terminable as of, and from and after the date of execution hereof notwithstanding, and regardless of: (i) any change in the law (statutory, judicial, or otherwise) at any time after the date hereof; and/or (ii) except as set forth in Paragraphs 3.1 and 3.2, whether any of the facts with respect to, or otherwise on the basis of, upon which any of the Parties hereto has entered into and/or executed this Agreement is at any time after the date hereof found or proven to be different in any manner whatsoever from the facts now believed by any of the Parties to be true as of the date hereof; and/or (iii) except as set forth in Paragraphs 3.1 and 3.2, the discovery of the existence of any additional claims based upon facts existing as of the date of this Agreement which any of the Parties hereto may have against any of the other Parties hereto.

4.2 Without limiting the generality of any of the provisions hereof, including, without limitation, the provisions of Paragraphs 2.1, 2.2, 2.3, 3.1, and 3.2 hereof, and in furtherance thereof, each of the Parties hereto hereby recognizes, acknowledges, and agrees as follows:

(a) Each of the Parties has retained an attorney and has had the opportunity to review with such attorney the meaning, significance, and legal effect of each provision of this Agreement in its entirety;

(b) Each of the Parties has had adequate opportunity to make, and has made whatever investigation or inquiry that it has deemed necessary in connection with the subject matter of this Agreement prior to the execution and delivery hereof;

(c) None of the Parties has been induced to enter into or execute this Agreement on the basis of any statement, covenant, agreement, promise, representation, or warranty of any of the other Parties hereto not otherwise expressly set forth herein;

(d) If any fact with respect to, or otherwise on the basis of, which each of the Parties has entered into and executed this Agreement, is at any time hereafter found or proven to be other than, or different from, the facts now believed by each of the Parties to be true, each of the Parties nevertheless hereby expressly accepts and assumes the risk of such possible difference in facts and further covenants and agrees that this Agreement shall be and remain effective, binding and non-terminable, notwithstanding any such difference in facts;

(e) This Agreement, and the settlement covered and contemplated hereby, is intended by each of the Parties to be and shall be final, binding, and conclusive thereon pursuant to a full and final accord and satisfaction between all of the Parties hereto and is intended to, and shall, constitute a bar to each and every claim, demand and cause of action covered by Paragraphs 2.1, 2.2, and 2.3 hereof, notwithstanding, and regardless of, any claims of fraud, misrepresentation, concealment of fact, mistake of, or change in, law or fact, or any other circumstance whatsoever including, without limitation, the discovery as of the date hereof of the existence of any additional claims which KNAPP may have against any of the ICU specified herein;

(f) It is the intention of the Parties that this Agreement shall be given full force and effect in accordance with each and all of the terms and provisions hereof, with respect to all claims, demands and causes of action which are subject to the provisions of Paragraphs 2.1, 2.2, and 2.3 hereof, including, without limitation, all unknown or unsuspected claims, demands and causes of action, if any;

(g) This Agreement is intended to, and shall, effect a full, complete and final settlement of all of KNAPP's claims, present and possible, each and all of which claims are denied and contested by ICU, and nothing contained herein shall be deemed or construed in any manner whatsoever as an admission by ICU of any liability of any kind or nature to KNAPP, with respect to all or any such claims;

(h) It is the intention of the Parties that this settlement is binding and enforceable in accordance with the California Evidence Code.

**5. MMSEA DISCLOSURES.**

5.1 This settlement is based upon a good faith determination of the Parties to resolve a disputed claim. The Parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. § 1395y(b). The Parties resolved this matter in compliance with both state and federal law. The Parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms. KNAPP warrants that he is not a Medicare beneficiary as of the date of this release. Because KNAPP is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare.

**6. FURTHER ASSURANCES.**

6.1 Each of the Parties hereto hereby covenants and agrees to do such acts and things, and in connection therewith, to execute and deliver such documents and instruments as reasonably may be required for effecting and otherwise carrying out the purposes of the settlement covered and contemplated hereby.

**7. GENERAL.**

7.1 In the event that any provision of this Agreement is unenforceable, such shall not affect the validity of any other provision of this Agreement. Each party has had the opportunity to review this agreement with legal counsel, and for all purposes, this Agreement was mutually drawn.

7.2 Except as otherwise expressly provided for herein, each of the Parties hereto shall pay its own costs, expenses, and attorney fees in connection with the claims and disputes which are herein settled, and the settlement covered and contemplated hereby, including, without limitation, all costs and expenses incurred in connection with the performance of all of his or its covenants, agreements, duties, and obligations hereunder.

7.3 No remedy conferred by any of the specific provisions of this Agreement is intended to be exclusive of any other remedy which is otherwise available at law, in equity, by statute, or otherwise, and except as otherwise expressly provided for herein, each and every other remedy shall be cumulative and shall be in addition to every other remedy given hereunder, or now or hereafter existing at law, in equity, by statute, or otherwise. The election of any one or more of such remedies by any of the Parties hereto shall not constitute a waiver by the Parties of the right to pursue any other available remedies.

7.4 All notices, demands or other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered in person or by any means whereby a signature confirming delivery is obtained. Any such notice, demand or other communication made pursuant to the provisions of this Paragraph 7.4 shall be deemed to have been given on the date actually delivered to the addressee to whom it is directed.

7.5 None of the Parties hereto may assign any of its rights, or delegate any of its duties hereunder without the prior written consent of the other Parties hereto, and any such assignment or delegation without the prior written consent of such other Parties shall be void *ab initio*, and said consent shall not be unreasonably withheld.

7.6 All terms and provisions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective transferees, successors, and permitted assigns.

7.7 This Agreement may be executed in one or more counterparts, all of which taken together

shall constitute one instrument.

7.8 This Agreement is made and entered into in the State of California and the laws of said state shall govern the validity and interpretation hereof, and the performance of the Parties hereto of their respective duties and obligations hereunder.

7.9 Paragraphs or other headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement; and, no provision of this Agreement shall be interpreted for or against any of the Parties because one or more of the Parties or its or their legal representative drafted the provision.

7.10 No breach of any provision hereof may be waived unless in writing and the waiver of any one breach shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.

7.11 This Agreement may be amended only by a written agreement executed by all Parties. Any such changes, addendums or alterations shall be attached to the original Agreement and shall be considered to be an integral part of the original, signed Agreement.

7.12 All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine or neutral, singular or plural as the identity of the person may require.

7.13 Should one of the Parties hereto retain counsel for the purpose of enforcing, restraining, enjoining or otherwise preventing the breach of, any provision hereof, including, without limitation, the commencement or institution of any action or proceeding (including arbitration) to enforce any provision hereof, for damages by reason of any alleged breach of any provision hereof, for a declaration of one of the respective Parties' rights or obligations hereunder, or for any other judicial remedy in connection therewith, the prevailing Party(ies) shall be entitled, in addition to such other relief as may be granted in such action or proceeding, to be reimbursed by the other Party(ies) for all costs and expenses incurred thereby, including, without limitation, the reasonable attorneys' fees and costs for services rendered to such prevailing Party(ies) in connection therewith.

7.14 This Agreement is entered into for the express benefit of the Parties hereto, their successors and assigns, and is not intended, and shall not be deemed, to create in any other person any rights or interest whatsoever, including without limitation, any right to enforce the terms hereof.

7.15 This Agreement embodies the entire understanding of the Parties, and there are no further or other agreements or understandings, written or oral, in effect between the Parties hereto relating to the subject matter hereof, unless expressly referred to by reference herein or executed concurrently herewith.

7.16 Should any provision of this Agreement be declared or be determined by any court of competent jurisdiction illegal, invalid or unenforceable, the legality, validity or enforceability of the remaining parts, terms or provisions, shall not be affected, and the illegal, unenforceable or invalid part, term or provision shall be deemed not part of this Agreement.

7.17 During the term of this Agreement, the Parties agree to continue working with one another in good faith and to deal fairly.

**[SIGNATURE PAGE TO FOLLOW]**

IN WITNESS WHEREOF, the Parties hereto have entered into and executed this Agreement as of the date first above-mentioned.

By: Jonathan Knapp
JON KNAPP, individually and as corporate officer on behalf of Source Showroom, Inc.

**ICU PRODUCTION, INC.**

By: Joseph Cohen
Joseph Cohen, Authorized Representative

**CONEY ISLAND PICNIC, INC.**

By: Joseph Cohen
Joseph Cohen, Authorized Representative